UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUY LUCAS ) | |
| ) | Case No.: 1:25-CV-04635 |
| Plaintiff, ) | |
| ) | Judge Elaine E. Bucklo |
| v. ) | |
| ) | |
| SOO LINE RAILROAD COMPANY, d/b/a ) | |
| CANADIAN PACIFIC, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS**

Now comes Plaintiff, Guy Lucas ("Lucas" or "Plaintiff"), by and through his attorneys, and pursuant to Local Rule 56.1(b)(3) hereby submits the following in response to Defendant Soo Line Railroad Company's ("Soo Line" or "Defendant") statement of facts.

**I. PARTIES**

1. Soo Line is a Class I railroad carrier engaged in interstate commerce and subject to rules and regulations promulgated by the Federal Railroad Administration ("FRA").

> Support: Exhibit 1, Declaration of Jeffrey McInnis ("McInnis Decl.") ¶ 3.

**RESPONSE: Admit**

2. Soo Line employed Plaintiff Guy Lucas as a conductor from 2010 to 2012 and as a locomotive engineer from 2012 through his termination on May 5, 2023.

> Support: Exhibit 2, Deposition of Guy Lucas ("Lucas Dep.") 11:11-12:17.

**RESPONSE: Admit**

3. Soo Line is largely unionized, with many non-management employees represented by various labor unions with which Soo Line has collective bargaining agreements ("CBAs") that govern the terms and conditions of employment for unionized employees.

Support:     Exhibit 3, Declaration of Al McCombs ("McCombs Decl.") ¶¶ 2-3.

**RESPONSE: Admit**

4.      Lucas was represented by the Brotherhood of Locomotive Engineers and Trainmen (the "Union"), including during the 2022-2023 period relevant here.

Support:   Exhibit 2, Lucas Dep. 27:24-28:3; Exhibit 4, April 25, 2023 Hearing Exhibits (Lucas Dep. Ex. 11) at SooLine0002087-88.

**RESPONSE: Admit**

5.      The Union's CBA with Soo Line governed the terms and conditions of Lucas' employment, including by setting out a disciplinary process that provides employees with the right to receive notice of alleged misconduct, the right to a hearing at which the company presents evidence of the alleged misconduct and the employee may choose to be represented by a union leader and present witnesses and evidence, and other procedures.

Support:     Exhibit 4, April 25, 2023 Hearing Exhibits (Lucas Dep. Ex. 11) at SooLine0002087-88.

**RESPONSE: Admit**

## II.     SOO LINE COMPLIES WITH FEDERAL SAFETY REQUIREMENTS AND OTHER RULES AND REGULATIONS

6.      Soo Line's operations are also governed by numerous safety rules, regulations, orders, and directives, including the General Code of Operating Rules ("GCOR"), which is a set of operating rules for numerous railroads in the United States intended to enhance railroad safety.

Support:     Exhibit 1, McInnis Decl. ¶ 3.

**RESPONSE: Admit**

7.      Soo Line's operations also are governed by internal policies, including its General Operating Instructions ("GOI") and Manager Operating Practice ("MOP") Notices.

Support:     Exhibit 1, McInnis Decl. ¶ 3; Exhibit 5, MOP Notice

(SooLine0001815).

**RESPONSE: Admit**

8.      Soo Line locomotive engineers and other operating employees must comply with rules in the GCOR, GOI, and MOP Notices, among others.

> Support:      Exhibit  1, McInnis  Decl.  ¶  4; Exhibit  5, MOP  Notice (SooLine0001815).

**RESPONSE: Admit**

9.      Lucas acknowledged that while working as a locomotive engineer, he had to comply at all times with applicable FRA regulations, the GCOR, Soo Line's general orders, and other instructions.

> Support:      Exhibit 2, Lucas Dep. 12:18-21; Exhibit 6, Excerpts of General Code of Operating Rules ("GCOR") (SooLine0000001-0000019) GCOR  Rule 1.3.1 at SooLine0000014; Exhibit 1, McInnis  Decl. ¶¶ 3-4.

**RESPONSE: Admit**

10.      GCOR Rule 1.15, titled "Duty—Reporting or Absence," provides in part: "Employees must report for duty at the designated time and place with the necessary equipment to perform their duties."

> Support:      Exhibit 6, GCOR Rule 1.15 at SooLine0000019.

**RESPONSE: Admit**

11.      GOI, Section 3, Item 2.2, titled "Locomotive Brake Test Information," provides: "If locomotive brake tests are performed by qualified persons other than the locomotive engineer, then prior to departure, the locomotive engineer must confirm the brake test was completed by obtaining the results: in writing or by radio from a person who has immediate access to the test results. If the results of the brake test are NOT made available, then the locomotive engineer must

perform the brake test."

> Support:    Exhibit 7, Excerpts of General Operating Instructions ("GOI")
> (SooLine0008452-8476) Section 3, Item 2.2 at SooLine0008454;
> Exhibit 1, McInnis Decl. ¶¶ 6-9.

**RESPONSE: Admit**

### III. LUCAS' LENGTHY DISCIPLINARY HISTORY OF VIOLATING SOO LINE RULES AND REPEAT "LAST CHANCE" LETTERS

12.    Soo Line's Hybrid Discipline & Accountability Guidelines ("Guidelines") in effect during the relevant period provided that "Employees subject to five (5) disciplinary events . . . during a 12-month period may be subject to dismissal."

> Support:   Exhibit 8, Hybrid Discipline & Accountability Guidelines ("Guidelines")
> (Lucas Dep. Ex. 9) at SooLine0000154.

**RESPONSE:    Admit**

13.    Soo Line disciplined Lucas four times in the year prior to the April 2023 events at issue in this lawsuit. The first two discipline incidents were set out in two discipline letters issued to Lucas on September 6, 2022, after Soo Line established at a formal investigation hearing held August 31, 2022, that Lucas failed to comply with employee availability and service protection requirements in July 2022 and August 2022.

> Support:    Exhibit 9, September Discipline Letter (Lucas Dep. Ex. 6) at
> SooLine0000165; Exhibit 10, September Discipline Letter (Lucas
> Dep. Ex. 7) at SooLine0000166.

**RESPONSE:  Admit that Lucas was disciplined as stated, but Deny that Lucas failed to comply with employee availability and service protection requirements as he was not subject to call. (PSOF ¶27; Lucas Depo., pp. 35-36)**

14.    The third discipline incident occurred less than a month later, on September 25, 2022, when Lucas failed to comply with specific instructions to stop his train clear of a particular track.

4

Support: Exhibit 11, November Discipline Letter (Lucas Dep. Ex. 8) at SooLine0001784.

**RESPONSE: Admit**

15. Soo Line determined at an investigation hearing on October 25, 2022, that Lucas violated multiple safety rules during the September 25, 2022, incident. By letter dated November 7, 2022, Soo Line notified Lucas that the September 25, 2022 incident and his previous disciplinary history could have warranted his dismissal. However, Soo Line informed Lucas that, "solely as a matter of managerial leniency" and "strictly on a 'last chance' basis," he was being suspended for 30 days instead of being terminated.

Support: Exhibit 11 November Discipline Letter (Lucas Dep. Ex. 8) at SooLine0001784.

**RESPONSE: Admit**

16. The fourth discipline incident occurred less than two months after receiving the November letter. On December 30, 2022, Lucas failed to safely stop a train he was operating while performing what is known as a shove movement, which is essentially a blind movement for the engineer as they are moving the train in the opposite direction of their line of sight (like backing up a car that is over a mile long with no back-up camera). Therefore, engineers must rely solely on the instructions from their conductors, who act as the engineers' eyes and ears and determine when the engineer needs to stop the train to ensure that they can do so safely. Soo Line considers shove-movement violations to be Major-Life Threatening Violation under the Guidelines. The classification is due to the severe safety consequences that can occur (and have occurred) when engineers are not following instructions regarding car counts, which alert the engineer when the train needs to stop.

Support: Exhibit 2, Lucas Dep. 30:22-32:4; Exhibit 8, Guidelines (Lucas Dep. Ex. 9) at SooLine0000156; Exhibit 12, January Discipline Letter (Lucas

5

Dep. Ex. 5) at SooLine0000164; Exhibit 13, Walker Decl. ¶ 3.

**RESPONSE: Admit**

17.    Based on Lucas' disciplinary history, and the severity of the shove violation, Soo Line assessed a 20-day suspension, again on a "last chance" basis, by a letter dated January 18, 2023.

> Support:    Exhibit 12, January Discipline Letter (Lucas Dep. Ex. 5) at SooLine0000164.

**RESPONSE:  Deny. Lucas was disciplined at least in part because of his ongoing protected activity of reporting safety concerns and an on-duty injury. (PSOF, ¶¶1, 4, 6; Lucas Depo., pp. 68-69, 82-83)**

18.    The January 18, 2023 last chance letter notified Lucas that, in light of his discipline history, any additional misconduct would not be tolerated and warned him that "[f]ailure to demonstrate an ability to follow company policies and rules, and work safely will result in dismissal under Soo Line's Hybrid Discipline and Accountability Guidelines. As such, your employment with the Company is in jeopardy if you commit another offense for which discipline is warranted." Lucas signed his acknowledgment of this notice on January 20, 2023.[1]

> Support:    Exhibit 12, January Discipline Letter (Lucas Dep. Ex. 5) at SooLine0000164.

**RESPONSE:  Admit**

---

[1] Lucas inaccurately dated the letter January 20, 2022, on January 20, 2023. Exhibit 2, Lucas Dep. 33:11-14.

6

19.     Lucas conceded during his deposition that his January 2023 discipline letter meant that his December 2022 violation was his "last shot."

Support:     Exhibit 2, Lucas Dep. 32:5-15.

**RESPONE:  Admit**

### IV.     LUCAS WAS FIRED AFTER VIOLATING SOO LINE RULES IN APRIL 2023

20.     At the beginning of his shift on April 14, 2023, Lucas conducted a visual inspection of the locomotive to which he was assigned. Lucas claimed to be concerned that a jagged edge at the bottom of the locomotive plow might have been out of compliance if it created a gap larger than six inches from the rail below it.

Support:     Exhibit 2, Lucas Dep. 15:14-16:14; Exhibit 14, April 18, 2023 Hearing Exhibits (Lucas Dep. Ex. 3) at SooLine0001806.

**RESPONSE:  Admit**

21.     Rule 1.15 of the GCOR required Lucas to have necessary equipment on his person to perform his duties. One of the tools Lucas was required to have with him every shift was a ruler that would have allowed him to measure the distance between the bottom of the locomotive plow and the top of the rail. Lucas did not have a ruler with him and so could not determine on his own if the plow was in compliance.

Support:     Exhibit 6, GCOR Rule 1.15 at SooLine0000019; Exhibit 2, Lucas Dep. 16:19-23.

**RESPONSE:  Deny that Lucas was required to have a ruler with him as an engineer. There is no rule or requirement that an engineer carry a ruler. (PSOF, ¶16; Carl Depo., pp. 49-50; Lucas Depo., p. 25)**

22.     Lucas did not report any problem with the plow to anyone at Soo Line. Instead, he reported to Soo Line's Mechanical Department that he could not find or did not have with him tools to assess whether what is best described as a rough edge of the plow put the plow out of

7

compliance with federal regulations governing the size of the gap between the top of the rail and the bottom of the plow.

> Support: Exhibit 15, April 18, 2023 Hearing Transcript (Lucas Dep. Ex. 2) at 44:12-14; Exhibit 2, Lucas Dep. 16:1-17:24, 24:2-25.

**RESPONSE: Deny that Lucas did not report the problem, he reported it to Soo Line's Mechanical Foremen. Further, Lucas used a reverser per the instructions of the foreman to measure where the plow had missing pieces of metal and a jagged edge and the reverser fit under the plow. (PSOF ¶12, 15; Lucas Depo., pp. 15-17)**

23. On April 14, 2023, in accordance with the CBA, Soo Line provided notice to Lucas that a formal investigative hearing would be held to determine the facts and circumstances in connection with his alleged failure to comply with instructions, resulting in unnecessary delay.

> Support: Exhibit 16, April 14, 2023 Investigation Notice (SooLine0001799).

**RESPONSE: Admit**

24. Soo Line held the CBA-required formal investigative hearing on April 18, 2023, during which it afforded Lucas all of his rights under the CBA, including union representation and the ability to examine witnesses and offer evidence.

> Support: Exhibit 16, April 14, 2023 Investigation Notice (SooLine0001799); Exhibit 17, April 17, 2023 Investigation Notice (SooLine0001800); Exhibit 15, April 18, 2023 Hearing Transcript (Lucas Dep. Ex. 2) at Lucas0029-119; Exhibit 14, April 18, 2023 Hearing Exhibits (Lucas Dep. Ex. 3) at SooLine0001799-1819.

**RESPONSE: Admit**

25. At the April 18, 2023 hearing, Lucas conceded he "could not find [his] ruler and could not find in my rule book where was the ruler piece of paper," referring to a ruler that is printed in a required rule book for use by railroad employees.

> Support: Exhibit 15, April 18, 2023 Hearing Transcript (Lucas Dep. Ex. 2) at 44:12-14; Exhibit 14, April 18, 2023 Hearing Exhibits (Lucas

8

Dep. Ex. 3) at SooLine0001810.

**RESPONSE: Deny the implication that Lucas carried a ruler with him separate from the piece of paper in the rule book. An engineer is not required under the rules to carry a ruler and one was never provided to him. (PSOF ¶16, Lucas Depo., p. 25:3-9)**

26. Lucas also said at the hearing:

The plow looked like it was jagging. And so I looked at it and thought it was a safety issue. I then climbed up on the locomotive. I told my Conductor that I thought the plow was wrong, and I called the Mechanical, and I told Mechanical that I could not find my ruler and I could not find in my rule book where was the ruler piece of paper. So I asked him what – what rule book it was because I couldn't remember which one had the ruler in it and if there was a way I could measure it because I stuck my flashlight up next to it, and it was almost the whole flashlight off the rail.

Support: Exhibit 15, April 18, 2023 Hearing Transcript (Lucas Dep. Ex. 2) at 44:7-18.

**RESPONSE: Admit**

27. Through the April 18, 2023 hearing, Soo Line substantiated the charge that Lucas violated GCOR 1.15, which required that he "report for duty at the designated time and place with the necessary equipment to perform [his] duties.

Support: Exhibit 18, May 5, 2023 Dismissal Letter (Lucas Dep. Ex. 4) at SooLine0001785.

**RESPONSE: Deny that Soo Line substantiated a violation of the referenced rule because a ruler is not "necessary equipment" that he was required to bring to the job. (PSOF ¶16, Carl Depo., pp. 49-50; Lucas Depo., p. 25)**

28. At the April 18, 2023 hearing, Lucas' conductor was asked by the conductor's union representative if he had assisted Lucas with a required locomotive air brake test on the locomotive during the April 14, 2023 shift, to which the conductor replied, "No."

Support: Exhibit 15, April 18, 2023 Hearing Transcript (Lucas Dep. Ex. 2) at 40:17-19.

**RESPONSE: Deny that the air brake test was "required." No air brake test was needed under the applicable rules at that time. (PSOF ¶24, Carl Depo., pp. 67-71; Lucas Depo., p. 51)**

9

29. Lucas admitted at the April 18, 2023 hearing that he "forgot" to perform the required locomotive air brake test on April 14, 2023.

Support: Exhibit 15, April 18, 2023 Hearing Transcript (Lucas Dep. Ex. 2) at 50:1-5.

**RESPONSE: Deny that Lucas forgot to perform the subject air brake test. Although he made that statement in the hearing, Lucas clarified in his deposition that he misspoke at the hearing and no air brake test was required under the rules. (PSOF ¶19, 24; Carl Depo., pp. 67-71; Lucas Depo., pp. 48-49, 51)**

30. Lucas' actions, as admitted and as reported by both himself and his conductor, prompted a second formal investigation under the CBA, this time into the facts surrounding the failure to perform a locomotive air brake test on April 14, 2023.

Support: Exhibit 2, Lucas Dep. 48:10-17.

**RESPONSE: Deny that the railroad was prompted to hold the second investigation because of said statements. Defendant knew that no air brake test was required and held the second investigation in retaliation for Lucas' protected activity. (PSOF ¶24, Carl Depo., pp. 67-71; Lucas Depo., p. 51)**

31. Soo Line gave Lucas notice on April 21, 2023, that a formal investigative hearing would be held into the failure to perform a locomotive air brake test.

Support: Exhibit 19, April 21, 2023 Investigation Notice (SooLine0002086)

**RESPONSE: Admit**

32. Soo Line held the CBA-required formal investigative hearing on April 25, 2023, during which it again afforded Lucas all of his rights under the CBA, including union representation and the ability to examine witnesses and offer evidence.

Support: Exhibit 19, April 21, 2023 Investigation Notice (SooLine0002086); Exhibit 20, April 25, 2023 Hearing Transcript (Lucas Dep. Ex. 10) at SooLine0001670-748; Exhibit 4, April 25, 2023 Hearing Exhibits (Lucas Dep. Ex. 11) at SooLine0002086-094.

**RESPONSE: Admit**

33. At the April 25, 2023 hearing, Lucas admitted that he did not perform the air brake test, nor did he or his conductor receive a notification that the prior crew had performed the test.

Support: Exhibit 20, April 25, 2023 Hearing Transcript (Lucas Dep. Ex. 10) at 49:11-21.

**RESPONSE: Admit**

34. At the April 25, 2023 hearing, despite admitting in the previous hearing that he "forgot" to perform the test, Lucas claimed that he did not need to perform the test because the mechanical manager—who was not assigned to the locomotive crew—said the train was "good to go" after inspecting the plow.

Support: Exhibit 20, April 25, 2023 Hearing Transcript (Lucas Dep. Ex. 10) at 38:6-10.

**RESPONSE: Admit**

35. At the April 25, 2023 hearing and during discovery in this matter, Lucas argued that he did not need to conduct a locomotive air brake test on April 14, 2023, under the GOI.

Support: Exhibit 20, April 25, 2023 Hearing Transcript (Lucas Dep. Ex. 10) at 39:23-40:7, 51:24-52:9; Exhibit 2, Lucas Dep. 51:2-16, 56:14-20.

**RESPONSE: Admit**

36. Soo Line's Assistant Director, Operating Rules & Practices (US), Jeff McInnis, testified by declaration that engineers must perform a locomotive air brake test before beginning any assignment unless they specifically obtain the results of the prior test on the locomotive.

Support: Exhibit 1, McInnis Decl. ¶¶ 5-9.

**RESPONSE: Admit**

37. Through the April 25, 2023 hearing, Soo Line thoroughly investigated the allegations against Lucas and substantiated the charge that Lucas violated four sections of GOI

Section 3 applicable to air brake tests and the federal requirements that tests be performed, citing specifically to Item 2.2 requiring that an engineer must confirm that a test was completed "by obtaining the results" or, "[i]f the results are NOT made available, then the locomotive engineer must perform the brake test."

> Support:   Exhibit 21, May 5, 2023 Dismissal Letter (Lucas Dep. Ex. 12) at SooLine0001795; Exhibit 7, GOI, Section 3, Item 2.2 (SooLine0008452-76) at SooLine0008454.

**RESPONSE: Deny that the allegations were substantiated. Defendant admits that the subject rule only applies when someone other than an engineer performs a brake test, which did not happen in this case. The rule is inapplicable. (PSOF ¶22, Carl Depo., p. 73)**

## V.   EVERY MANAGER WHO REVIEWED LUCAS' APRIL 2023 INVESTIGATION RECORDS RECOMMENDED HE BE FIRED.

38.   Superintendent Jacob Rinnels, the officer presiding over the April 18, 2023 hearing, independently reviewed the respective transcripts, exhibits, and Lucas' disciplinary history. On April 20, 2023, Rinnels determined that Lucas failed to comply with instructions and unnecessarily delayed his assignment on April 14, 2023, and recommended dismissal because of Lucas' disciplinary record.

> Support:   Exhibit 22, Rinnels Recommendation (SooLine0003268-277) at SooLine0003274.

**RESPONSE: Admit**

39.   Separately, Superintendent Joshua Pennington, the officer presiding over the April 25, 2023 hearing, independently reviewed the respective transcripts, exhibits, and Lucas' disciplinary history. On April 27, 2023, Pennington determined that the charges were proven and also, and separately, recommended dismissal.

> Support:   Exhibit 23, Pennington Recommendation (SooLine0004250-254) at SooLine0004254.

**RESPONSE: Admit**

12

40.     The Soo Line Labor Relations Department reviews proposed discipline and all potential terminations to ensure that the proposed outcomes are appropriate and consistent with Soo Line's obligations under its CBA and past discipline for similarly situated employees.

Support:    Exhibit 24, Declaration of Justin Dittrich-Bigley ("Dittrich-Bigley Decl.") ¶¶ 3, 4.

**RESPONSE: Admit**

41.     Rinnels' recommendation went to Assistant Director of Labor Relations Al McCombs, who reviewed the April 18, 2023 hearing recommendation.

Support:     Exhibit 3, McCombs Decl. ¶ 4.

**RESPONSE: Admit**

42.     McCombs testified that the incident he independently reviewed and assessed was at least Lucas' fifth disciplinary event within 12 months, placing Lucas at dismissal under the Guidelines, and that Lucas had already received two last-chance letters prior to his violation.

Support:     Exhibit 3, McCombs Decl. ¶ 5.

**RESPONSE: Admit**

43.     Pennington's recommendation went to then-Manager Justin Dittrich-Bigley, who reviewed the April 25, 2023 hearing recommendation.

Support:     Exhibit 24, Dittrich-Bigley Decl. ¶ 5.

**RESPONSE: Admit**

44.     Dittrich-Bigley testified that the incident he independently reviewed and assessed was at least Lucas' fifth disciplinary event within 12 months, placing Lucas at dismissal under the Guidelines, and that Lucas had already received two last-chance letters prior to his violation.

Support:     Exhibit 24, Dittrich-Bigley Decl. ¶¶ 5-6.

**RESPONSE: Admit**

45.     John Kay, Jr., who was then Soo Line's General Manager Operations – US East, reviewed both hearing transcripts, Lucas' discipline history, and the labor relations assessments. On April 27, 2023, Kay sent a summary of evidence to Senior Vice President–Eastern Region Nicholas Walker and recommended that Lucas be dismissed from service. The disciplinary recommendation did not describe Lucas reporting any safety concern with the plow.

> Support:     Exhibit 25, Kay Recommendation (SooLine0004227-228) at SooLine0004228.

**RESPONSE: Admit**

46.     Regarding Lucas' failure to report with necessary equipment, Kay reported Lucas' description to Walker: "During the hearing, Mr. Lucas stated that he observed the plow of the engine he was to operate had a piece of metal which, seemed to have been a repair, fallen off and looked jagged. He stated that he called Mechanical, advised them he could not find his ruler and was instructed to use his reverser [a control for the locomotive] to measure the height of the plow since it was 6 inches."

> Support:     Exhibit 25, Kay Recommendation (SooLine0004227-228) at SooLine0004227.

**RESPONSE:   Admit**

47. Walker decided to terminate Lucas' employment for two separate and distinct reasons: because Lucas violated the rule requiring him to have necessary equipment when reporting to work and because Lucas failed to perform a locomotive air brake test when one was required under the rules and regulations. Walker testified via his declaration that he would have terminated Lucas for either violation alone, given that Lucas was subject to the last-chance notice.

> Support: Exhibit 13, Walker Decl. ¶¶ 5-6, 11-12; Exhibit 7, GOI Section 3, 1.8 at SooLine0008453.

**RESPONSE: Deny that Walker terminated Lucas as a result of the subject alleged rules violations. Walker had knowledge of Lucas' protected activity and terminated him in retaliation for his protected activity. (PSOF ¶18, Ex. C; Lucas Depo., pp. 68-69, 74)**

48. On May 5, 2023, Soo Line sent Lucas two separate termination letters with independent disciplinary findings for rule violations identified during the two independent investigations.

> Support: Exhibit 18, Dismissal Letter (Lucas Dep. Ex. 4) at SooLine0001785; Exhibit 21, Dismissal Letter (Lucas Dep. Ex. 12) at SooLine0001795.

**RESPONSE: Admit that Lucas received two separate termination letters, but Deny that the investigations were "independent." The investigations were held in retaliation for Lucas' protected activity. (PSOF, ¶1, 4, 6; Lucas Depo., pp. 68-69, 82-83)**

49. The timing of Soo Line's decision to terminate Lucas was dictated by its CBA with the union representing Lucas.

> Support: Exhibit 4, April 25, 2023 Hearing Exhibits (Lucas Dep. Ex. 11) at SooLine0002087-88.

**RESPONSE: Admit**

## VI. LUCAS NOW ALLEGES HE ENGAGED IN PROTECTED ACTIVITY.

50. Lucas asserts five incidents of alleged protected activity in this FRSA retaliation action. First, Lucas says that in 2022, he called the Illinois State Commerce Commission to complain that the wrong sized ballast (rock) was used in a railroad yard, making walking unsafe.

15

Support:      Exhibit 2, Lucas Dep. 87:21-89:4; 90:1-6.

**RESPONSE: Admit**

51.    Lucas produced no documents in discovery demonstrating that he called the Commission nor that the Commission received any report from him. Lucas testified at his deposition that he made the call sometime in 2022. Lucas had no other specifics; other than he believed that the rocks making up the ballast in the Bensenville, Illinois, railyard were too large.

Lucas produced nothing in discovery to show that there was any objective reason to believe the ballast was not correct, and the only information Lucas sought in discovery about the ballast matter was through a few deposition questions to Doug Carl, who as Road Foreman of Engines was Lucas' supervisor but had no responsibility for or knowledge of ballast requirements.

Support:      Exhibit 2, Lucas Dep. 88:18-89:4; 90:1-6; Exhibit 26, Deposition of Douglas Carl 24:19-26:3.

**RESPONSE: Deny that there was no objective evidence that the ballast was too big. Lucas testified that he measured the ballast and that his co-workers suffered injuries from walking on it. (PSOF ¶7, 8; Lucas Depo., pp. 87-89)**

52.    Second, Lucas claims that on June 10, 2016, he reported a shoulder injury to Soo Line.

Support:      Exhibit 2, Lucas Dep. 81:5-18, 93:7-24.

**RESPONSE: Admit**

53.    Third, Lucas claims that he submitted an internal complaint about a trainmaster, Kurt McKelvey, who Lucas alleged drove through stop signs in a railyard on March 13, 2023 while transporting a train crew in the vehicle.

Support:    Exhibit 2, Lucas Dep. 74:13-19, 90:7-13; Exhibit 27, Internal Complaint (Lucas Dep. Ex. 16) at Lucas0256.

**RESPONSE: Admit**

16

54. Lucas' complaint about McKelvey's driving was submitted at 9:08 a.m. on March 13, 2023—and indicated that Lucas observed the "hazard" more than a day prior on March 12, 2023, at 1:30 a.m. The internal complaint reported, "Trainmaster was in such a hurry to get us to our engine he was not stopping at the stop signs in the yard at locations where they are [there] for cross traffic situations." The report made no assertion that McKelvey drove unsafely at any other time nor that he did so routinely or regularly. Lucas did not claim that there was any "cross traffic" or other specific risk during this incident. When asked for an action he would recommend as a result of his complaint, Lucas requested that someone "[e]xplain to him the consequences of not stopping at those stop signs."

> Support: Exhibit 27, Internal Complaint (Lucas Dep. Ex. 16) at Lucas0257.

**RESPONSE: Admit**

55. Fourth, Lucas again complained about McKelvey on April 1, 2023, claiming that thirteen hours earlier, McKelvey "ordered" Lucas' crew to improperly perform an air brake test on a 53-car train earlier that day. Lucas wrote that McKelvey "stated that we were only to inspect the brake cylinder of the cars to determine if the brakes were set[,] not the brake rigging on both sides as per the [GOI] rule." Lucas claimed he then "attempted to read the rule over the air" and McKelvey "refused to answer."

> Support: Exhibit 2, Lucas Dep. 70:18-73:13, 90:14-19; Exhibit 27, Internal Complaint (Lucas Dep. Ex. 16) at Lucas0257.

**RESPONSE: Admit**

56. Lucas produced no evidence that McKelvey had any role in or influence on the April 14, 2023 and April 18, 2023 discipline investigations and resulting recommendations or decisions.

> Support: Exhibit_2, Lucas Dep. 76:22-78:10, 79:5-25.

17

**RESPONSE: Deny that there is no evidence of McKelvey's involvement. Although no direct evidence or admission was produced in discovery, there is substantial circumstantial evidence connecting Lucas' protected activity and the discipline he received. See Memorandum of Law in Opposition to Summary Judgment.**

57. Fifth, and finally, Lucas claims his April 14, 2023 report to the Mechanical Department about the locomotive plow was protected conduct.

Support: Exhibit 2, Lucas Dep. 90:20-23, 96:11-97:4.

**RESPONSE: Admit**

## VII. WALKER DID NOT KNOW OF ANY ALLEGED PROTECTED REPORTS

58. Lucas did not depose Walker and has produced no evidence in discovery that suggests Walker knew Lucas reported alleged problems with the ballast, an injured shoulder, McKelvey's past conduct, or any alleged safety concern with the locomotive plow.

Support: Exhibit 13, Walker Decl. ¶¶ 14-15.

**RESPONSE: Deny, there is substantial circumstantial evidence produced that Lucas' protected activity was a contributing factor to his discipline. Additionally, Defendant admits that Walker was aware of Lucas' report that his locomotive plow was noncompliant. (PSOF ¶18, Ex. C)**

59. Walker testified by declaration that at the time he decided to fire Lucas, he did not know about any of the actions Lucas now claims to be protected activity under the FRSA.

Support: Exhibit 13, Walker Decl. ¶¶ 14-15.

**RESPONSE: Deny, despite his self-serving Declaration, Walker was at least aware that Lucas reported his locomotive plow as noncompliant. (PSOF ¶18; Ex. C)**

## VIII. LUCAS FAILS TO IDENTIFY ANY CAUSAL CONNECTION

60. At his deposition, Lucas testified that Soo Line "did not like" that he "found an

issue" regarding the locomotive plow on April 14, 2023, and that it "used all kinds of tactics" to terminate his employment. He did not give any specifics.

Support:    Exhibit 2, Lucas Dep. 61:23-62:3.

**RESPONSE:  Deny that no specific examples of intimidation and harassment were provided by Lucas. He described many instances of harassment that made up the culture of the railroad during his employment. (PSOF ¶9, 10)**

61.    Also at his deposition, Lucas testified that he contacted Mechanical about the plow "because [he] believed that this was a safety issue" because the jagged spot looked like it might be higher than regulations allow for the bottom of a plow.  When asked how the jagged plow edge created a safety issue, Lucas admitted that he did not know, testifying only that he believed "[t]here's a reason to have that rule" setting a maximum distance between plow and rail, but he had no idea what that reason was: "It's outside my knowledge."

Support:    Exhibit 2, Lucas Dep. 15:14-16:4, 21:16-22:5.

**RESPONSE:  Admit**

62.    A photo of the edge shows the front corner of the plow edge to be rough, but without any significant material missing.

Support:    Exhibit 14, April 18, 2023 Hearing Exhibits (Lucas Dep. Ex. 3) at SooLine0001806.

**RESPONSE:  Admit**

63.    Asked to explain his retaliation allegations, Lucas referenced a "system of intimidation" and blamed "intimidation tactics," the "culture," "intimidation from the top down," and "the vibe."

Support:    Exhibit 2, Lucas Dep. 68:1-4, 68:21-69:11, 69:20-24.

**RESPONSE:  Admit**

64.    When asked for specific examples of intimidation, Lucas did not provide any,

responding that "specific instances are not at the top of my head" and testified that he had not seen any "physical evidence" connecting his alleged safety concerns to his termination.

Support: Exhibit 2, Lucas Dep. 69:25-70:6, 79:23-25.

**RESPONSE: Deny that no specific examples of intimidation and harassment were provided by Lucas. He described many instances of harassment that made up the culture of the railroad during his employment. (PSOF ¶9, 10)**

65. When asked to name a single manager who intimidated him over safety issues, Lucas avoided doing so by stating, "the names don't matter."

Support:        Exhibit 2, Lucas Dep. 69:12-15.

**RESPONSE:  Deny that Lucas "avoided" specifically identifying a manager. He named Nicholas Walker later in his deposition as a manager known to harass and intimidate employees who report safety concerns. (PSOF ¶29; Lucas Depo., pp. 126-128)**

**IX.     SOO LINE EMPLOYEES ARE ROUTINELY DISMISSED FOR RULE VIOLATIONS THAT FOLLOW LAST-CHANCE WARNINGS.**

66.     Between August 2022 and January 2025, Soo Line dismissed 11 other conductors or engineers, in addition to Lucas, for also violating rules after last-chance notices.

Support:        Exhibit 24, Dittrich-Bigley Decl. ¶¶ 7-8.

**RESPONSE:  Admit**

67.     In each case, the violation that resulted in dismissal was not, in and of itself, a dismissible offense; instead, it was the violation while subject to a "last chance" warning that led to the termination.

Support:        Exhibit 24, Dittrich-Bigley Decl. ¶ 9.

**RESPONSE:  Admit**

**X.      RELEVANT SOO LINE POLICIES AND PRACTICES.**

68.     Soo Line prohibits retaliation against employees who report accidents and safety incidents.

Support:        Exhibit 28, Canadian Pacific Policy 1819
                (SooLine0000147 – SooLine0000151) at
                SooLine0000147.

**RESPONSE:  Deny that Soo Line follows the referenced policy in good faith. (PSOF ¶28; Lucas Depo., pp. 68-69)**

69.     Soo Line operates an internal web platform through which employees

may report safety concerns.

        <u>Support</u>:      <u>Exhibit 2</u>, Lucas Dep. 73:6-13.

**RESPONSE:  Admit**

        Respectfully submitted,


        */s/ Andrew J. Thompson, Esq.*

Andrew J. Thompson (N.D. Ill. Bar# 0071530)

Sʜᴀᴘᴇʀᴏ ǀ Rᴏʟᴏғғ Co., L.P.A.

1111 Superior Ave. East., Suite 1310

Cleveland, Ohio 44114

T: (216) 781-1700

F: (216) 781-1972

athompson@shaperoroloff.com

*Attorneys for Plaintiff*
*Guy Lucas*

22

CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2026, I caused a copy of the foregoing *Plaintiff's Response*

*to Defendant's Statement of Facts* to be filed using the Court's CM/ECF electronic filing system.

Parties can access this filing through the Court's system.


*/s/ Andrew J. Thompson, Esq.*
Andrew J. Thompson (0071530)