IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Guy Lucas, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 25 C 4635 |
| Soo Line Railroad Company d/b/a Canadian Pacific, | ) | |
| Defendant. | ) | |

Memorandum Opinion and Order

Plaintiff Guy Lucas sued defendant Soo Line Railroad Company, doing business as Canadian Pacific ("Soo Line"), for violations of the Federal Railroad Safety Act, 49 U.S.C. § 20101 *et seq.* ("FRSA"). Soo Line moved for summary judgment, and I denied that motion, in part because of my interpretation of two elements of that statute. Before me is Soo Line's motion to certify my order for an interlocutory appeal under 28 U.S.C. § 1292(b). I grant that motion.

**I.**

My denial of Soo Line's motion for summary judgment involved, *inter alia*, disputes over two provisions of the FRSA. To make out a *prima facie* case of retaliation for protected activity under the statute, an employee must show that, along with two other elements, the "rail carrier" knew he had engaged in protected activity and that the protected activity was a "contributing factor" in the carrier's decision to take an adverse employment action against him. *Armstrong v. BNSF Ry. Co.*, 880 F.3d 377, 381 (7th Cir. 2018). The parties disagreed about the meaning of these terms. As to the former, Soo Line urged that the specific decisionmaker who disciplined Lucas had to be aware of his protected activity; Lucas—as I read his argument—contended that it was his managerial staff as a whole who had to know. As to the latter, Soo Line argued that in *Armstrong*, the Seventh Circuit required some showing of "animus" over and above the protected activity playing some role in the decision to fire Lucas. And Lucas rejoined that the Supreme Court had written animus out of the burden-shifting AIR 21 framework[1]

[1] That is, the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, with the relevant provision found at 49 U.S.C. § 42121.

with which courts analyze FRSA claims in *Murray v. UBS Securities, LLC*, 601 U.S. 23 (2024). I sided with Lucas in each case.[2]

Soo Line is now petitioning to certify both issues for interlocutory appeal. Reformulated to be somewhat more comprehensive, they are: (1) Under 49 U.S.C. § 20109(a),[3] does "discriminate" mean that a rail carrier has factored an employee's protected activity into its decision to discipline him in any way? Or must the employee show that the carrier acted with some greater quantum of ill intent? And in this respect, has the Supreme Court altered the AIR 21 framework as incorporated into the FRSA in *Murray*, or does *Murray* simply accord, although different semantically, with the Seventh Circuit's decision in *Armstrong*? And (2) where 49 U.S.C. § 20109(a) holds that a plaintiff must show that "[a] railroad carrier...a contractor or subcontractor of such a railroad carrier, or an officer or employee of such a railroad carrier" was aware of his protected activity, does the

---

[2] See my prior opinion, *Lucas v. Soo Line Railroad Company*, --- F. Supp. 3d ---, 2026 WL 2137593, at *7-*13 (N.D. Ill. July 24, 2026), for a full treatment of both issues.

[3] "**In general.**--A railroad carrier engaged in interstate or foreign commerce, a contractor or a subcontractor of such a railroad carrier, or an officer or employee of such a railroad carrier, may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act..."

statute require knowledge of the plaintiff's protected activity on the part of the specific decisionmaker who disciplined him, or on the part of the railroad carrier "as a whole," in the sense of the plaintiff's "supervisory staff as a whole," or in any other sense? I agree with Soo Line that both questions are ripe for review by the Seventh Circuit.

## II.

Although the ordinary rule is that appeal must wait for a final order, 28 U.S.C. § 1292(b) allows the certification of particular interlocutory rulings. As the Seventh Circuit has put it, Section 1292(b) sets out four requirements for such a ruling: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original).

In that same case, the Seventh Circuit clarified that "a question of law" means not, for example, the legal question presented by every motion for summary judgment—is there a legitimate dispute of fact—but "a pure question of law, something the court of appeals [can] decide quickly and cleanly without having to study the record." *Id.* at 676-77. The two questions Soo Line seeks to certify are of exactly this kind: each is an "abstract legal issue" involving a pure exercise of statutory

interpretation, and neither will require scrutiny of the record. *Id.* at 677.

A "controlling" issue for the purposes of Section 1292(b) is not necessarily a dispositive one, but one which is "serious to the conduct of the litigation, either practically or legally." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (citations omitted). Both issues are controlling in this sense. As it stands, a jury would be able to take testimony from the various managers who were aware of Lucas's protected activity as direct evidence that Soo Line "knew" about the activity; under Soo Line's interpretation, that testimony would be at best circumstantial and Lucas would face a much higher bar to prove knowledge. Likewise, the same kind of testimony, combined with the timing of Lucas's firing—and some other suspicious facts—would allow Lucas to fairly easily make out a *prima facie* case that his activity played some role in his firing; under Soo Line's interpretation, Lucas would again be fighting up a much steeper hill. Were Lucas to win at trial and to lose on either issue on appeal, a second trial, short of settlement, would be necessary. Both issues are thus "serious to the conduct of the litigation." *Id.*

For the same reason, resolution of these two questions will "*speed up* the litigation" in the sense of avoiding that inevitable appeal and, in the event of my reversal, a second trial. *Ahrenholz*,

219 F.3d 675; *accord Johnson*, 930 F.2d at 1206 ("[A] growing number of decisions have accepted the rule that a question is controlling...if interlocutory reversal might save time for the district court, and time and expense for the litigants.") (citations omitted).

And both issues are contestable. Though I appreciate Lucas's argument in opposition to the motion to certify, that my rulings were so immaculate as to be beyond debate, reasonable minds could differ. I believe that despite their distinct verbiage, *Armstrong* and *Murray* announced the same definition of "discriminate," but the cases *do* use different language that could be read differently. And where the FRSA says that a plaintiff can show knowledge on the part of a "railroad carrier" *or* "a contractor or subcontractor" *or* "an officer or employee" of the carrier, that seems to me to say that the employee can show knowledge on the part of the carrier *or* a specific manager. But there is a certain nebulousness to "railroad carrier," given that, as Soo Line notes, a carrier is *made up of* specific employees and managers, and the Fourth Circuit has reached a different reading of the same passage. *Conrad v. CSX Transportation, Inc.*, 824 F.3d 103, 107–08 (4th Cir. 2016).

**III.**

Because the two questions Soo Line wishes to certify are questions of *law*, are *controlling*, are *contestable*, and have

resolutions which promise to *speed up* this litigation, I grant Soo Line's petition to certify them, as herein reformulated. I likewise stay the case pending the outcome of the appeal.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge
Dated: November 25, 2026